Argument is 20-1962 SPIP Litigation Group v. Apple. Mr. Fenster, whenever you're ready. Good morning, Your Honors, and may it please the Court. The Court should reverse the exceptional case finding because the District Court abused its discretion under this Court's holding in BIACS v. NVIDIA. As in BIACS, the summary judgment order was based on a modification of the claim construction, adding for the first time the requirement of tracking and an always accurate database. Well, Mr. Fenster, let me just, and this is Judge Prowse, let me ask you. Firstly, BIACS was a non-presidential opinion of our Court, right? Absolutely, Your Honor. Okay. Let me just ask you, hypothetically, setting aside your argument about whether there was a modification, do you agree that a judge could easily act within his or her discretion to if a patentee obtains one claim construction to avoid invalidity and asserts the opposite claim construction to show infringement? I think that if the original claim construction did foreclose the infringement read, then yes, that is not the case here. So, Your Honor, go ahead. Well, wasn't the District, I mean, the District Court here pulled out a lot of quotations from what counsel had said before us, et cetera. And he wasn't, there was a lot of citation to the record here in terms of ascertaining what your position was. Yes, Your Honor, but he did. And those statements are only material to the extent that they constitute a clear and unmistakable disclaimer of claim scope, to the extent they limit the claim construction. And Your Honor, you would have to find that no reasonable litigant could find that those statements did not limit the claims. And here we had good reason to believe that they did not. And our infringement theory, which I'd like to explain to you, was absolutely consistent with the critical distinction that we made of the prior art. The accused products are different than the prior art and in a material way, such that our infringement read here was not foreclosed either by the claim construction nor were they inconsistent with what we argued to this court in getting that plain meaning claim construction. Counsel, the District Court characterized what your client was doing as duplicitous machinations. Yes, he did. And described it as a slick maneuver. That's pretty difficult characterizations to overcome. And the court seemed to reasonably find this was an exceptional case. Your Honor, that's absolutely... He did make those findings and he did use very harsh language. And it was because he misunderstood our infringement read. And if I can walk you through our infringement read and why it was consistent with the statements that we made to this court and that the prior claim construction, I can show you why this case is absolutely on all fours with this court's reasoning and by acts, which though non-precedential is absolutely solid reasoning and should control here. Well, just before you get into that, I'll allow you to do what you're about to do. But I mean, you said all this to the District Court and he just rejected it based on his read of the record, correct? That is true, Your Honor. And it's because I think he just misunderstood the accused products. He believed Apple and Cisco when they represented to the court as they do here, that their products were doing exactly what the prior art that we distinguished does. And those statements are simply not correct. And I can show you in the record where that's true and how our infringement theory differed from the prior art and was consistent because the accused products differ in a material way from the NetBIOS and WINS prior art references that were distinguished in the prior case. So if I can walk you through our infringement theory, this patent has to do with setting up a point-to-point communication call for voiceover IP. So two IP phones that connect to the internet. The problem is that when they connect, they have different IP addresses every time they connect. So your phone number will have a different IP address associated with it every time you connect. So you need a server to keep track of each phone's IP address when they connect. So claim one of the 704 patent is representative. That's at page 134 of the record. It's in his order. And what it requires is code for transmitting to the server a query as to whether the second process, that's the callee, is connected. Code for receiving the protocol when it is connected and responsive to that address establishing a point-to-point communication. Okay. So what's happening is this is sending a query to say, is it connected before the server provides the IP address to the caller phone to try to establish the point-to-point communication link with the callee? Okay. That was the key distinction. And so as Apple recognizes in its brief at page 26, the critical distinction that we asserted below was that the prior art failed to determine whether the second computer is online. Instead, the prior art only consulted a registration database, which had potentially stale information. That was not enough. Just checking a stale registration was not enough. And so the prior art just said, was it registered before? And if so, I'm going to give that IP address to the caller and let it try to establish a call, even though it may be a bad IP address now. That was not... Declaration of a former colleague, Judge Michelle. He was a distinguished judge to be sure, but he wasn't a judge on this case. Did he attend all the proceedings? He did not attend all the proceedings. He was hired as a consultant in connection with the appeal from the summary judgment order. So he reviewed all of the summary judgment materials, including all of the statements that were quoted from Mr. Wodarski in the Samsung case going forward. And he testified very clearly in his deposition that he read those statements, disagreed that those constitute a disclaimer and did not believe them properly part of the claim construction. And our point with that is that evidence is that reasonable minds can differ whether those statements constitute a disclaimer or not. But this isn't a 5149 issue. This was a question of the judge determining how litigation was conducted before him. That's correct. But it all comes down to whether or not those statements were limiting of the claim scope. And that comes down to whether they were disclaimer or not. And no prior court had so held. This court, after hearing those exact same statements that Judge Alsup relied on, this court said plain meaning. This court in its SIPnet and Samsung decision said the claim construction, the proper claim construction, listening to all those statements was plain meaning. It made no reference to disclaimer. It made no reference to estoppel. And importantly, the claim construction did not include any reference to an always accurate database. And because it didn't include an always accurate database, it wasn't until, so Your Honor, I'll just back up a second. So this court in giving the SIPnet and Samsung decisions, hearing the statements by Wodarski that Judge Alsup said constitute a disclaimer and require that the claims be limited to an always accurate database, this court said the proper construction was plain meaning. It made no reference to a database. Neither did the party's construction. And it wasn't until the summary judgment order where the court clearly limited the claims to the always accurate database, even though the claims don't even reference a database. He did so based on a finding of apparent disclaimer, but that was not in the prior claim construction. And that's why this case is on all fours with BIACS. Now, Your Honors, this court or Apple and Cisco told Judge Alsup, and they tell you, Apple at page 12 of the brief and Cisco at page 36, that their products merely do the same thing as the Winsnet BIOS. And the court below bought that. And it is just not true. And I'll show you in the record why. The Winsnet BIOS had a stale registration. The accused products also have a registration database, but they do something more. They don't just check the database, get the IP address and provide it to the caller and say, good luck, see if that works. Instead, there's a protocol where they send messages. The server sends a signaling message called an invite message to the callee phone to determine if it's online now. And it's only after making sure that it is currently online at the time of the query, that it will then provide the IP address to the caller to complete that point-to-point communication. That is the critical distinction between the accused products and the prior art. And that is why our infringement read was not inconsistent with the prior claim construction or the critical distinction that we told this court distinguished our claims from the prior art, because the prior art didn't do anything more. As the Samsung court noted, it neither tracked nor checked to determine. That's at 3588 of the appendix in the Samsung opinion. And so the Samsung court specifically recognized that within the scope of plain meaning was checked to determine as well as tracking. And it's critical that your prior art, our infringement read was consistent and it wasn't foreclosed by the prior construction until the court adopted the limitation of an always accurate database. And it materially did that at page 144 in the order. And in the order on fees, it notes that that was the key holding of the summary judgment order. And that brings, go ahead, your honor. Actually, I was going to ask Joseph, was that the final bell or was that just that Mr. Fenster is into his rebuttal? That is for Mr. Fenster's rebuttal time. The timer was paused while we got Mr. Wilcox back on the conference. All right. Okay. Mr. Fenster, you're into your rebuttal, but your choice of use of your time. So please proceed if you wish. Thank you, your honor. So your honor, that brings us within squarely within the scope of BIACS because the prior claim construction did not have an always accurate database. And yes, the court did give very harsh language. It received our argument poorly, but it was because the court misunderstood our theory of the case. And that is clear from his order on summary judgment at page 16, which is 147 of the record, which said that he was saying instead, when the accused server receives an invite, it simply attempts to make the requested call using the periodically updated registration information, regardless of whether that second process is actually online or not. That's the critical misunderstanding. That is not the call. That was the signaling. At that point, the server has not provided the IP address to the caller to attempt to make the point to point communication link. That doesn't happen until it verifies that it's online. And that was the key distinction that I think the district court missed and why he thought we were inconsistent with the statements before the court. I'll reserve my rebuttal time. Thank you. Okay. Mr. Swanson. Thank you, Chief Judge. Good morning and may it please the court. My name is Reedy Swanson, representing Apple. The question before this court is whether the district court abused its discretion when concluding the straight path litigation position made this case stand out. And the answer is no. Twice, straight path stood before this court and took a narrow view of the scope of its patent claims, only to turn around and take the opposite position before the district court in this case. The district court, which lived with this case for four years, properly factored those, quote, duplicitous machinations into its analysis and concluded that combined with a substantively weak position on the merits, this case stood out. And we have just a couple points we'd like to make in response to straight path arguments today. First, their appeal rests on a fundamentally flawed view of the law. They're asking this court to say that if there is ever any daylight between the text of a claim construction order and the text of the summary judgment opinion, fees are off the table. But that is not the law. Octane Fitness rejected those kinds of rigid tests and held that the statutory text is inherently flexible and looks to the totality of the circumstances. Second, applying that correct legal standard, the district court reasonably concluded that two considerations made this case stand out. The shifting stands of straight paths, claim construction, and the second is an infringement position that was incompatible with this court's claim constructions. And finally, your honor, the district court properly awarded fees for the entire litigation because all of the problems with straight path positions stem from the briefing argument and opinion in which occurred in 2015 before this case was ever even filed. So let's start with that. Your opponent argues that the court misunderstood the case or at least their position. Can that qualify as an abuse of discretion? Not in this case, your honor, because the district court quite correctly pointed out that straight paths argument directly contradicted the position it took in the prior appeals and which was reflected in this court's opinion. That's an important component that straight path keeps trying to dodge. So at the prior appeal, I just want to read this exchange with the court because I think it's quite, from the sit net argument, because I think it's quite illuminating. This court asked, is the difference in your invention that the database has to be updated when somebody logs off? And the answer was absolutely. And I say that for two simple reasons. And the first of those was one is requires it and that's the actual language used by the patentee. So they're saying at that point that the claim language is requires a database that updates when somebody logs off. And then they turned around and told the district court that that wasn't true in this case. And sit net actually did include that and refer to that in the opinion. If you look at the bottom of page 1362 in sit net, the court described an updating database and then it said that that is what must be happening if the connection server is going to do what the claim language requires, supply an answer to the query whether the second process is connected to the computer network. So there was a perfectly reasonable basis for the district court to conclude that that was part of the claim construction that this court issued in sit net and not something that they had just said in argument. But even if it was something that they just said in argument and then took the opposite position later, that's still within the scope of the kind of litigation conduct that under Optane Fitness is fair game for a fees award. And because I don't think there's really much debate today that they sort of directly contradicted themselves with respect to how the patent claims work, that's really all this court needs to know to affirm. Now they're trying to tell you today that there was a way that they could have made an infringement argument that was compatible even if you actually set aside the tracking and checking issue. But that doesn't work either. And this was reflected just as well in the their claim as they argued it to the district court requires the first process to ask about the online status as of the very moment that the first process makes the query to the server. But that's just not how the devices worked in this case. FaceTime asks the server a different question. It asks, do you have potentially fail registration data about a device? If the answer to that question is yes, then the server goes on to ask a different question to the second process, which is, do you want to accept a call? If the answer to that question is no, then the first process gets no further information about online status. It could be that the second process is online and just wants to ignore the call, or it could be that the second process is in fact offline. We just don't know. If the answer is yes, you still can't infer that at the time the second process confirms it was online, that at some point seconds or minutes earlier, the second process was online at the time of the first process's query. So either way, even if you set aside this tracker check theory altogether, their claim construction was incompatible with what this court said the plain language of the claim required in SIPCAT. So I think that that really puts to rest the idea that there was a viable theory of infringement here. And the declaration from Judge Michel that Your Honor asked about earlier doesn't change things. As Your Honor pointed out, Judge Michel had a very limited exposure to this case, and he testified about that himself in his deposition. He said that he spent about 14 hours with the case. He never read the fees briefing. He conducted no, quote, systematic review of the summary judgment proceeding. So on that limited view of the record, the district court properly concluded that its own experience with the case outweighed Judge Michel's limited picture. And you don't have to take just our word for it. Judge Michel said in his declaration, this is at Appendix 11-098, Judge also has a broader and deeper knowledge of many aspects of this case than I do, and in many cases I have no knowledge of certain aspects, as we've agreed. So Your Honor, the district court properly looked to the full totality of straight path conduct and its litigating positions in this case. And looking at that picture, it found that this case stood out. That is the only test. There's no test about whether a reasonable litigant could have taken that position under other circumstances. And I think that this court really made that very clear in its opinion in Blackbird Technologies, which is 944F3 at 915. There, the appellant similarly argued that the district court was wrong in assessing the substantive strength of its arguments because it hadn't concluded that the argument was objectively baseless. It only concluded that it was, quote, flawed. This court said that that was a perfectly appropriate consideration. That's the same as true here. And in fact, you add that to the conduct and you have, I think, a case that very clearly stands out. Thank you. Thank you. Mr. Wilcox. Good morning, Your Honor. May it please the court, Justin Wilcox on behalf of Cisco. This court should affirm the district court's award of exceptional case attorneys fees to Cisco for at least three reasons. First, this is a textbook exceptional case. Straight paths really did argue one position before this court regarding validity and the opposite position when asserting infringement in the district court. And I'd just like to briefly touch on that, that there's absolutely no daylight between the claim construction that this court provided in SITNEP and what the district court applied here. The key to the non-infringement holding in the district court was the temporal element of the claim construction. And that is at the time that the query is transmitted to the server. That's what the district court focused on. And it's that the query is transmitted to the server. In fact, it took an attempted call where the phone would actually ring and the callee would pick it up before there was any indication that the phone was connected. So what straight path pointed to and what the district court pointed to in its summary judgment opinion on page 13 of its opinion, which is appendix 75-76, is that a person picking up a phone, a ringing phone, that happens well after the query, and that's the only way that the Cisco system actually knew whether another phone was online. I'd like to move next. Mr. Wilcox, this is Judge Prost. I just want to, there's a second issue applicable to you all, and that's with regard to the fee arrangement, correct? Yes, Your Honor. Let me just add, given that the Supreme Court at least has rested or embraced to a certain extent the slowed star requirement, notwithstanding whatever arrangement you have, isn't there an argument that you should have been able at least to keep and provide evidence of the hours billed and the reasonable rate in order for the special master here to be able to attribute the appropriate amount for attorney's fees? Your Honor, we understand that's what Straypath is arguing, but we disagree. Straypath is asking for an inflexible rule that a party cannot receive an exceptional case fee award without performing an hourly load star. We're advocating a flexible rule that takes into consideration all the circumstances that show fee request is reasonable, and we submit that the cases that Straypath points to... Yeah, but how do you know it's of the hours billed and a reasonable rate for attorneys? Your Honor, we have a lot of data points here. I would say load star data points that show that our fee is reasonable. First of all, we put in declarations for both law firms to describe for each month the litigation task each lawyer performed. For the Damaris form, the percentage of the time that each of those people devoted to the case, and then the flat fee. So we call that a monthly load star, but we also provided additional information from Cisco's other law firm in this case, Baker Botts, that showed their hourly billable entries. And those entries showed that Cisco's flat monthly fee payments totaled several hundred thousand dollars less than if it had actually paid by the hour. Now, we can also look to market benchmarks. We cited market benchmarks in the form of similarly situated exceptional cases in the district. We pointed to the Kelo Pass case, which like our case, resolved on a summary judge of non-infringement. In that case, the Northern District of California awarded a 5.3 million dollar award. We also pointed to the Qualcomm case in the same district. That one went through trial, and we think that's relevant because our case resolved very close to on the EVA trial. And in that case, the district court awarded 6.7 million dollars. And we also can look at the load star that Apple did here. That was an award of 2.3 million dollars. So, all those benchmarks show that our fee request and what the district court awarded was reasonable, but we also have the data that the court can look through. We have the declarations. We have the information that's provided about what happened. And the court actually went through it here and considered it and said, well, I don't think this is enough, and cut it by 50 percent. But I think what sets apart this case from the load star cases in the is prevailing party fee shifting provisions in civil rights and other cases where the fee shifting happens as a matter of course without market rates and where clients typically don't pay their lawyers. Section 285 is different in all respects. First of all, fee awards are the exception, not the rule. Patent cases typically involve businesses that contract with their law firms at market rates, creating many market benchmarks. And third, patent litigants typically pay fees whether they win or lose. So, they're not incentivized to pay more than reasonably necessary. And I think it's very important to highlight that the district court deals with all these different fee shifting statutes. It deals with the civil rights type fee shifting statutes that have an amount of course. It deals with Section 285 where fee shifting is the exception, not the rule. And it looked at all this case law, and it concluded that the civil rights fee shifting cases do not limit Section 285 to a load star. And I think that it's also important to recognize here that because exceptional cases really are exceptional, they're very rare, they're a remote possibility, that there's really not this concern for the gamesmanship and how attorneys keep fees like there is maybe in other contexts where firms may build their business model around the kind of automatic fee shifting statutes in these other cases. So, there's really no argument here that in the patent context, the firms are driving their whole business model or driving their primary conduct on trying to game for an exceptional case fee award. Now, the other aspect that makes this different is with the load star is that the load star, the whole point of it is to estimate or approximate what the market would have paid a lawyer for particular services. In fact, the Supreme Court makes that clear in Purdue. It says that the load star is supposed to roughly approximate the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour. Here, we don't need to estimate or approximate a number. We don't need to try to divine what the market would have done. We know both. It's what Cisco actually paid. That's where we should start. And what Stray Path is asking is to ignore that. In a perfectly functioning market where we know what Cisco paid, we should ignore that and have Cisco try to make up what it would have paid based upon the billable hour when it didn't actually pay that way. We think that's counterfactual and we don't think that's reasonable, especially here where we can look at these other benchmarks. For example, like I discussed, we can look at Cisco's firm that did keep track of billable hours and see that those hours are higher than what Cisco actually paid for the flat fees. We can look to the other market benchmarks, like the fee awards in other cases. We can look at the AIPLA litigation survey for what companies have paid for litigation in that district. If the court were to decide that a load star were required in this case, we think there's enough in this record to affirm even without reaching this issue of whether the load star is required. So, first of all, we have Damaris LLP's, my firm's modified load star. We call it a monthly load star with the information that we provided. We have Cisco's other firm, Faker Bots, and their records. And we just simply ask the court that it rejects Stray Path's attempt to zero out Cisco here, which would really be an unjustified windfall. Okay. Thank you. Mr. Fenster, you've got some time left. Mr. Fenster? I apologize. I was muted. Yes. Your Honor, thank you. I'd like to make three points. First, the infringement position was not inconsistent with the statements made to this court and SIPnet and Samsung because they were not disclaimer. Judge Michel specifically addressed refer you to page 1111107, which is his deposition where he says, I reviewed at length and many, many times over every one of the exchanges between the three judges to see if there was any clear, unmistakable disclaimer of claim scope that would limit it, including whether it would limit it to the always accurate database. And I didn't think it was close. I didn't think Wodarski made the disclaimer the judge also seemed to conclude that he had. And Your Honor, my point with that is those statements are only material if they constitute a disclaimer, which goes to claim construction. And I don't believe that any court can say that it is exceedingly meritless to take a position that the former whether it was limiting of the claim scope, this court had not so limited it before and the court below didn't do so until summary judgment. And that puts us squarely within BIACS. The second point, Your Honor, Your Honors, is that is their point, Mr. Swanson's point that we didn't meet the immediately that the timing point was wrong. And I'll point you to the Cole Declaration in Opposition, where he says it happens immediately upon the query. This is at 6938 and 6940 and 7092 and 7093 for Cisco. And that's where he talks about the additional steps that Cisco and Apple take. So the invite is the query. And specifically, they point to, I'll point you to paragraphs 23 and 17, where he says it happened at the entire time. The third point, if you'll indulge me just for 30 seconds, Your Honor. So the third point is the Lodestar requirement is not our requirement. It's the Supreme Court's requirement. The Lodestar, the Supreme Court has held that you have that the burden of proof in order to meet your burden of fees. That's the starting point. And everything else is a modification of that. But you have to have that so you can test the reasonableness of the fees. And all of the Supreme Court case law requires that. There is no case cited by Cisco that doesn't require it. And so Cisco's award should be eliminated just because they didn't meet their burden of proof, despite being given multiple chances to do so by the district court. Okay. Thank you. We thank both sides and the cases submitted. That concludes our proceeding for this morning.